Thank you, Judge Smith, and may it please the Court, David Frederick, for Preston Marshall. I'd like to start with subject matter jurisdiction, address race judicata, and comparative fault. The indispensable parties issue I think is kind of wrapped up with the law of the diversity issue and the facts of the comparative fault, so I won't address that unless you have questions. On subject matter jurisdiction, the cases are not always so clear, but the principle that comes out of the Supreme Court's Navarro decision and old Thomas decision is that in a traditional trust, the citizenship of each trustee counts for diversity purposes. So in a suit that is nominally brought by one trustee against another trustee, because of the donative interests involved and the fiduciary duties that are wrapped up in each trustee's responsibilities, every trustee is a necessary party to the controversy in the words of the Navarro decision by the Supreme Court. The only exception is one that doesn't apply, which is that the beneficiaries are not counted. That's the holding of Navarro, but as the Supreme Court's later decision in Americold establishes, it's not for the courts to be establishing new jurisdictional rules, particularly in the area of diversity of citizenship. In every other circumstance, the unincorporated association, every member or every trustee counts for diversity purposes. Congress made corporations an exception, and of course class actions are an exception. So what that means here is that it is undisputed that Elaine and Pierce are citizens of Texas, as is Preston. So the diversity would be destroyed by having all of the trustees of these trusts count for diversity of citizenship purposes. Let me understand if I see, it seems that you're making a couple of different points. One of them is, do you agree that a traditional trust is not a legal entity? And so we're not talking about an LLC or an unincorporated association or something like that and sort of attributing to it all of the citizenship of the members. I thought that's what whatever the Supreme Court case is and also the Seventh Circuit case of Dormer said that. A trust isn't an entity. It's a relationship, unless there's some special statute and that doesn't, that's not here. So are you, let me just, I just want to understand, you're not making that argument, are you, that the trust is some sort of entity and we have to have all the trustees here? Correct. Correct. You're not making that argument? I'm making the argument that the trust is a relationship that is created by the donor or the grantor to establish the fiduciary duties of the people who are vested with control over property. And because of that, every trustee has the same power and the same fiduciary duty and responsibility. So if one trustee tries to sue another trustee saying, you violated that, it really implicates all of the relationships among the trustees and therefore the diversity of each trustee has to be taken into account. Are you saying that whenever, that when there's one trustee is plain, if you have to have the other trustees in as indispensable parties? Well, I think that's the purport of the Navarro decision. Okay. Well, that's, that's a different argument than the argument I thought you were making, which is, well, a trust is an entity, therefore you must have all the trustees and that's different. So why are the, an indispensable party, that's a different set of circumstances than some other legal doctrine. So why are they indispensable parties? So Judge Duncan, I want to be clear and I want to direct the court to footnote 17 of the Navarro decision where the court addresses the implications of the federal rules with respect to this principle about trustee relationships. And what the court, the way I read that footnote, Which footnote? I think it's footnote 17, Your Honor. The way I understand the court's analysis here is that because all of the trustees are to be counted, if you want to have the case in federal court, you have to take that into account in determining who is suing whom. And so whether you're thinking about it from a rules perspective, what Navarro says is that all of the trustees have to be counted for citizenship purposes in a case where they bring that as a plaintiff. Okay, and so your best authority for that, which is what I was going to ask, is Navarro? That's Navarro? I think so, but Thomas also supports this principle. Thomas is a case where the trustees were the defendants and the court held that all of defendant trustees have to be taken into account in determining whether there's complete diversity or not. And this court in the past decision, an opinion by Judge Rubin, held basically the same thing. And so I think that the outlier cases that I'm happy to discuss with you have flawed reasoning in light of what the Supreme Court has held about the limitations of diversity jurisdiction and the creation by courts of doctrines that would run afoul of basic principles of citizenship. Now I think it's important, and I'll address Dormer and Lennon now, Dormer was a case where the citizenship of the two trustees would have been diverse, but I think the court got a little bit caught up in this involuntary plaintiff issue. And so what it said about the issue of the trustees is actually technically not correct, but it got to the right result because there the two trustees were brother and sister. The brother was from Illinois, the sister was from Indiana. The brother sued the financial advisor to the sister, also an Indiana corporation. And what the Seventh Circuit held was that you can't drag your sister trustee in as an involuntary plaintiff. The only way that you can bring interpleader is to make them as a defendant. And so for that reason, the court held that complete diversity was satisfied. But the dicta that it had about the trustee issue, I think, is something that was not correct under the rules of Navarro. What part of Dormer do you think is incorrect? I think the part of it is where it's discussing that the trustee citizenship of the sister Catherine did not need to be taken into account. That part of it is incorrect under Navarro. Is that the part where it's citing a merrick hold, the United States Supreme Court? Yeah. What it got right was the holding, which was that there was complete diversity in that case. But that would have been true if the plaintiff had sued the sister as a defendant. What the brother was trying to do was to make the sister come in as a plaintiff so there would not be complete diversity on both sides of the V. And so I think Dormer is a case that can readily be distinguished by this court. Now, the question is what's left of the Tenth Circuit decision in Lennon. I'm not sure that's still good law after the merrick hold decision because there what the court held was that a non-diverse trustee could be skived off in order to create complete diversity. And I think that's contrary to the Supreme Court's subsequent holding in a merrick hold. But be that as it may, that principle cannot be— Look, I'm sorry. I'm just reading a merrick hold here. When a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. And it cites Navarro for that proposition. Why doesn't that settle the diversity question? Because it doesn't settle the question of who the other trustees are. In a single trustee circumstance, that is clearly the principle, and that is, I think, well established. I would direct you, though, to the GB forefront decision by the Third Circuit where Judge Jordan addressed this question about how to take into account the citizenship of the various trustees. And in footnote six of that opinion, Judge Duncan, Judge Jordan writes that even though in that case they only have a single trustee and so, therefore, are considering the citizenship of that trustee under the language you just quoted from a merrick hold, where there are multiple trustees of a trust, you have to take into account the citizenship of each trustee. And the reason for that decision and the reason for that rule is as follows. Where you're talking about the problems inherent in trust management where every trustee has equal fiduciary duty and equal fiduciary relationship to the property, complaints by one trustee against another trustee invariably implicate the activities and responsibilities of the other trustees. But secondly, to allow the rule that Dr. Cook is arguing for here would enable the manipulation of federal court jurisdiction. Because as we point out in our briefing, if they wanted to create jurisdiction in Louisiana, they would have one way to do that. If they wanted to create jurisdiction in Texas, they have a different way to do it and it all depends on how the majority vote of the trustees decides to create a citizenship for a plaintiff in a particular circumstance. And if anything is clear from the Supreme Court's cases about diversity jurisdiction, it is that it's for Congress to decide when there are to be expanded limits on diversity jurisdiction. This is not an area where the courts traditionally have expanded access to power. Now if I could address the race judicata issue, all of the new claims that are brought as heritage have to be dismissed. Because Dr. Cook had the same authority, had the same responsibility, had the same underlying common nucleus of facts and could have brought the same claims in Cook 1 but did not do so. He doesn't have an argument really that he wasn't in privity with himself or that Preston was not in privity with himself. And so then if you look at the claims, all of the claims stem from common facts. The non-transfers from the Paroxysome Trust to both heritage and legacy. So the later damages that they are seeking to claim as the new basis for a new claim were all foreseeable and the question is whether or not when Dr. Cook brought Cook 1, he should have used the power that was vested in him by the majority resolution and actually done a serious litigation to determine whether or not there would be ongoing harms that needed to be addressed through some continuing jurisdiction of the district court or some allocation of damages that would be measured at the time of final judgment. Did not do that. And so as a result, at the very least, you should cut off as barred by race judicata the claims against heritage, as to heritage, and you should also cut the tax years 2017 and 2018 as calculated in the damages measurement because those clearly would have been part of Cook 1 under any normal analysis of race judicata. So that, for those reasons, the race judicata issue would bar certain claims as to heritage and limit the amount of damages. Now as for legacy, Dr. Cook mentioned legacy in the Cook 1 complaint, that's in the appellate record at 48, and 33 times mentioned legacy in the summary judgment motion briefing in Cook 1. So there's no question that Dr. Cook had every reason to have brought legacy in. Legacy was going to suffer the same harm from the failure to make the transfers from the Paroxysome Trust, and just because they want a do-over doesn't mean the law permits it. The whole idea behind race judicata is to create and promote judicial efficiency by bringing all of the claims at one time based on the same common occurrences and the same facts, and that's why we have a race judicata principle. All of the facts alleged are to be the same. Now with respect to the comparative fault, there are disputed facts as to the role of Elaine and Pierce in contributing to the damage. The district court, however, erred by cutting off the fact finding. These are questions that ought to go to a jury as to Pierce's role in refusing to split the Paroxysome Trust some 10 years ago, which created continuing harm that should be explored on remand. And furthermore, Elaine's actions with respect to the Paroxysome split and the effects on tax liability also create fact questions that are not suitable for summary judgment. I'm happy to save the rest of my time for rebuttal unless you have questions. You've saved time for rebuttal. Thank you, Mr. Frederick. Mr. Jones? Thank you, Your Honor. Philip Jones on behalf of Dr. Cook in his two capacities as a co-trustee of the Marshall Heritage Foundation and the Marshall Legacy Foundation. Let me first address the issue of his authority. This is a traditional. Both parties agree it's a traditional. Can you, can you move your voice up a little bit? Just speak into it. Both Legacy and Heritage are traditional Louisiana trusts. Both parties agree to that. For that reason, Navarro, Cardin, and Merrick Cole, their holdings don't apply because Cardin applies to a limited partnership, Merrick Cole applies to Maryland REIT, Navar that he relies upon is a Massachusetts business trust. Entities created under state law that are not corporations and they're not traditional trusts. And in all three of those cases, the Supreme Court makes it very clear. We're talking not about traditional trusts where the rule is, is you ask him, you look only to the trustee's citizenship for the traditional trust. And that's what we're dealing with here at Louisiana traditional trust. Under Rule 17, the trustee is the one who files the lawsuit. Under Louisiana law, it is the trustee who files the lawsuit and enforces the rights. Now, in this case, there were three trustees, Mrs. Marshall, Pierce, this is for Heritage, Pierce, and Dr. Cook. They were trustees from the beginning. Under Louisiana law, unlike other states, three trustees, two can, three can authorize one to enforce those rights. That's what happened in this case. That's what happened in the first case when this case was in front of the court. In that case, the same precise issues were decided then and diversity was found. You read Judge Fallon's opinion, you read Judge Zaney's opinion, you read this court's  It specifically says subject matter jurisdiction based upon diversity. Now he wants you to reverse that panel's decision. So that's the first reason why he's wrong. Second reason is you pointed out, Judge Duncan, in both Dormer and in Lennon, the precise issue was in front of the court. In the case of Dormer, it's what the law school would say is all squarely on point, all fours. You had three trustees, one who sued, one who did not sue, the sister, who would have destroyed diversity. And in that case, the Seventh Circuit struggled with that issue, but it had the precise issue that you have in front of you now. Do you look at the citizenship of non-party trustees? And they said, no, no. And that was a precise argument that was made to them, and they rejected it. Instead, they used a Rule 19 analysis, struggling to get ... We have a traditional trust, so the three Supreme Court cases don't help us, other than to say, you look at the trustees. So how do we decide whose citizenship do we look at? And they applied a Rule 19. And with all due respect to my opponent, it is clear that the other trustees are not necessary parties. In fact, Judge Fallon went through that analysis when they filed a motion to dismiss based upon an argument that Mrs. Marshall and Pierce were indispensable parties and would destroy diversity. And Judge Fallon went through it and said, no, they're not even necessary. In fact, they've authorized this lawsuit. I can protect all the rights, so they're not. Now, similarly, excuse me, the Seventh Circuit, I mean the Tenth Circuit, and Lennon did the same analysis. It applied Rule 19, and it said, this trustee was properly dismissed under Rule 21 to preserve diversity. So you have a situation where you had five trustees of an ERISA plan suing in their own name. One was undiverse, and the court dismissed it. So it's to preserve diversity, and the Tenth Circuit said that's appropriate. So even if— Your view is the Seventh Circuit is correct in Dormer, and we should follow that. Yes. And the proper analysis is an indispensable party analysis under Rule 19? Exactly. That's your argument? Exactly. And even there, Your Honor, under 19b, it gives you the authority to craft something to avoid a nondiverse party being there, because you can dismiss an indispensable party if you can craft a judgment that still protects the rights of that indispensable party. What's your response to Mr. Frederick's argument that this would sort of invite gamesmanship in order to manufacture federal jurisdiction? Well, on a policy level, that was a specifically rejected argument by the Tenth Circuit in Lennon. They said, no, there's no gamesmanship in this one. Rule 19 allows that protection. If there is gamesmanship, if there is collusion, you can deal with it on a Rule 19 analysis. And in this case, there's no facts to support that, and there was no collusion to support that. We had a situation where we had a mother and a brother who didn't want to sue Preston. They wanted a non-party, non-family member to sue. They didn't want to be involved in the litigation, and to that extent, it was determined by the magistrate and Judge Fallin that they were, in the first, they wouldn't even be deposed. Mrs. Marshall was not, there was a protective order granted by the court, so Mrs. Marshall was not even deposed in the second lawsuit because they said nothing she knew was relevant to the issues before the court. So there was no collusion, there was nothing, there's no policy issue. And again, the Tenth Circuit says, if there is, you deal with it under Rule 19. That's the purpose of 19. And that gives the court, from a policy standpoint, the ability to see, and this is points out in Bynum, Judge King says, you don't, you look at the trustees who the parties, whether you're there suing or being sued. For the same reason, the citizenship of Pierce, who is a co-trustee of Paroxysome, is irrelevant. When Dr. Cook sued Preston to enforce the rights under the indenture, he sued only Preston because it was only Preston who was breaching his duties. Pierce stood there saying, I'm prepared, but his citizenship was irrelevant. You'll see no mention of citizenship in either case that deals with the issue of the citizenship of the co-trustee of Paroxysome. So they're both irrelevant. You look at who is in front of you and use a Rule 19 analysis, but both courts have appealed. And that's what he says, no, you look at Navarro. Well, Navarro didn't deal with it. Now let me deal just for a minute with Registered Accountant and I'll come back. This was raised in front of Judge Fallon, who is in a unique position because he had been the presiding judge in the first case that came up when Dr. Cook sued for injunction and relief by a simple declaration of there's a breach of trust. Judge Fallon knew what the issues were when he wrote that opinion, which was affirmed by this court. So when the motion to dismiss for raise due to counter grounds was presented to him again, he knew precisely what he ruled in the first case and he knew precisely what the issues were that he was going to rule on. And he made it very clear that in the case of the removal, he was going to focus on the post-judgment actions of Preston. He was not going to look at anything pre. He was going to focus on those actions that had occurred in front of him. And he ruled, and when he wrote the decision that's in front of him, he specifically focused on the post-judgment actions of Preston. And they have not appealed that. They have not appealed the finding by Judge Fallon that there was sufficient cause for Preston's removal as trustee. Similarly, when it came to damages, he pointed out that in the first case, there was no reasonable certainty of damages. Those damages had not been suffered because the tax liability was one, unknown. They did not know until 2019 that there would be a tax liability when the IRS sent the first tax notice. And then in 2021, when the tax liability of the Paroxysome Trust was established, then the damages had a reasonable certainty. If Dr. Cook in the first lawsuit had asked for damages, he would have been met with a Rule 12b-6 motion saying, you have no cause of action. Your damages are totally speculative. And he would have been right. So when the damages were, in fact, established, and they agreed on the damages, they haven't appealed that, $3 million for each trust plus accrued interest, then that cause of action arose. And again, Judge Fallon understood that and he said, looking at what's happened, the damages claim did not arise until post-judgment. And he focused on that. And he's correct. He's correct as a matter of law. Now third, and then I'll come back to jurisdiction, he raises the issue of comparative fault. A, comparative fault does not apply to a breach of contract. That's black liberal law. There's numerous opinions under Louisiana law that Article 2323 of the Civil Code does not apply to any breach of contract claim. It applies to tort. Secondly, comparative fault was never pled throughout. It was only brought in the end. Thirdly, neither Mrs. Marshall or Pierce owe any duty to Preston or to Mrs. Marshall, excuse me, to Dr. Cook, that a comparative fault. That was, it's not a tort claim. As I explained to Judge Fallon in the motion for summary judgment hearing, this is a breach of contract. Preston owed an obligation to Dr. Cook to dispense $6 million approximately every year to the two charities. That's what it was. Nothing more, nothing less, and 2323 is simply not implicated. There's nobody, Mrs. Marshall, Pierce are not joint tort feasors with Preston so that he can allege, you know, here's your comparative fault. He was one who owed the duty to Dr. Cook. That's what Judge Fallon found, which is why as a matter of law he just dismissed that argument. Similarly, the mitigation argument was dismissed by both the magistrate and by Judge Fallon. Article 2002 of the Civil Code says that there is a duty to mitigate. It's a duty of the obligee to take reasonable efforts to reduce or minimize the damages that the obligor. He has suffered. He can't just stand back and do nothing. But none of the things that they point out to as were acts of mitigation that Dr. Cook should have done have any relevance to that. Additionally, as the Supreme Court of Louisiana has said, when an obligor has the same ability to perform as the obligee, he can't insist that the obligee perform what the obligor could do. And in this case, as the district court recognized, at any minute, Preston could have just signed the wiring instruction. That's all he had to do. Every three months, Pierce would send him a wiring instruction signed, and he asked for Preston to sign it so they could move the money, that time $800,000 each quarter, and he wouldn't do it. And in the first lawsuit, you affirmed that that was a breach of trust on the part of  And that ultimately caused the damages to be suffered by Dr. Cook for the two beneficiaries. So there is no mitigation claim. Simply as a matter of law, and it is Judge Falentine, there's no issue of fact. If you look at what he said, it comes down to essentially Preston should have sued, excuse me, Dr. Cook should have sued Dr. Preston sooner. That's not a reasonable effort. There's no duty on that part. In fact, I called it the Hutzpah to argue that Preston should somehow have an ability to argue with a jury, you should have sued me sooner. You should have moved faster. Well, everything Dr. Cook did was in front of Judge Falentine. He knew what actions Dr. Cook had taken to enforce the judgment and everything else. So he knew that that had no basis whatsoever. In fact, if you read, I think it's the last opinion of the district court, he notes in a footnote, at every step of this litigation, Preston has fought the enforcement of the implementation of my orders to the point that I've held him in contempt. So getting back to the issue of removal, if Dr. Cook had asked for removal in the first lawsuit, which he did not, and been told no, he could still have come back and sued again for the actions post-judgment, which he did, and again, we would be here with him with Preston being properly removed. So raised uticada goes away there, because it wouldn't have made any difference, because it wouldn't have applied to the post-judgment actions. So look, that has nothing. So we're back to jurisdiction, which after seven years, and again, it was the Tenth Circuit who acknowledged in that case, I think there was a two or three year delay, and said, you know, under Rule 19, begins to wonder about that. Well, here we have a seven year delay, from the moment that the first lawsuit was filed in May of 2017, an argument there, a motion to insist on Colorado River Grounds, which presumes diversity jurisdiction, and asked the court to abstain from exercising its jurisdiction, always there was no argument anywhere of manufactured diversity, anything collusion, nothing in the record, it's only in the reply memorandum that it's raised to you for the first time, which we appreciate you allowing us to follow through and reply. I'm not sure I'm about to end, unless you have some questions. All right, thank you, Mr. Jones. Mr. Frederick for Rebellion. Thank you. Thank you. First Judge Duncan, I gave you the wrong footnote, Sida Navarro, it's footnote nine, not footnote six, and I apologize that I did that. I do want to stress a couple of points. The comparative fault issue we have addressed in the brief, the blue brief at page 53 and note 16, there are principles under Louisiana law that create for an allocation of responsibility for breaches of the fiduciary duty among the various trustees. And so, it's not true that it is just a breach of contract per se, we're talking about alleged breaches of fiduciary duties among the various trustees. But on the core question here that I think you have to address first is subject matter jurisdiction. They're asking you to create a judicial exception for traditional trusts, and they are asking you to do that on the basis of how they interpret state law to give certain powers to a trustee in order to bring suit. I think one thing is really clear from Supreme Court precedent, which is that state law is not to be used to create diversity jurisdiction. You just take the citizenship of the parties as you find them given the circumstances. But what is also clear is that for unincorporated associations, you have to take into account the citizenship of all of the relevant parties. Here they are all trustees with equal power over the property that was donated to the trust. And for that reason, it is surely to be regretted that we didn't discover the subject matter jurisdiction problem until relatively late, but this Court could have identified that with a law clerk who was burrowing into the cases and asking the right questions. And I think the important point here is that it's necessary to get the answer right. We are not asking you to reconsider or reverse Cook 1. That is a final decision by the Fifth Circuit. It is well established that jurisdictional defects are not to be subsequently raised to collaterally attack final judgments. We are not seeking to do that. What we are seeking to do is to say that because Cook 1 was final, you should treat that for race judicata purposes, certainly as to the claims with respect to the Heritage Trust, which could have all been brought in the first lawsuit. So at the very least, you have to eliminate about half of the damages and remand for reconsideration of proper damages calculation. Back to the jurisdictional question, because you're running short on time. So Mr. Jones said that we can't look to the citizenship of non-party trustees under Rule 19. What is the significance of the fact that the trustees are not parties? I think that creates the manipulation problem. He did not have a real answer to the problem that they, through a majority of the vote of the trustees, they can manipulate whether there's jurisdiction in Texas or Louisiana, or if they wanted to create jurisdiction in Mississippi, appoint a new trustee who has diversity for purposes of Mississippi. But in fairness, parties do that all the time to create or defeat jurisdiction. They do, Judge Smith, but they don't do it in the context of trusts. A trust is a different instrument, and it is a different jurisprudence around it. And we know that from the Thomas v. Board of Trustees case from over 100 years ago by the Supreme Court, and all of the cases since then. The Rule 19 problem that he wants to create the solution would be a unique solution for all other unincorporated associations. There's no limiting principle to his point that if you have a partnership, you would just skive off the partners that you didn't want to involve in order to create complete diversity. But the Supreme Court has, I think, consistently held that that is not how courts are to decide jurisdictional problems. All right. Thank you, Mr. Frederick. Thank you. Your case and all of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.